<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  | : |  |
| --- | --- | --- |
| DIANA DIMARE, | : |  |
|  | : |  |
| Plaintiff, | : | Civ. No. 07-4268 (GEB) |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| METLIFE INSURANCE COMPANY, | : | **MEMORANDUM OPINION** |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon Defendant Metlife Insurance Company's ("Metlife" or "Defendant")[1] motion for summary judgment [Docket # 23] on Plaintiff Diana DiMare's ("DiMare" or "Plaintiff") remaining employment discrimination claims pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the parties' submissions and decided this motion without oral argument pursuant to FED. R. CIV. P. 78. For the reasons set forth below, the Court will grant Metlife's motion for summary judgment on Plaintiff's remaining employment discrimination claims.

I.    **BACKGROUND**

**A. Basic Undisputed Facts**

Plaintiff joined Metlife as a financial associate in August, 1991, and held various positions with Metlife until February, 2006. (Compl. ¶ 3-5; Answer ¶ 3-5.) In August, 2001,

---

[1]      The Court notes Defendant's assertion that "Defendant Metlife Group, Inc. is improperly pleaded in the Complaint as 'Metlife Insurance Company.'" (Def.'s Mot. Br. at 1, fn 1.) Plaintiff does not dispute this contention, which does not impact on the actions pending. The Court will refer to Defendant herein as Metlife.

Plaintiff was promoted to the position of Assistant Vice President and Financial Officer ("AVP").  (Def.'s R. 56.1 ¶ 7; Pl.'s R. 56.1 VN ¶ 7.)  In or about August, 2003, Plaintiff began reporting to Ms. Theresa Robinson, and through Ms. Robinson to Mr. Eric Steigerwalt.  (Def.'s R. 56.1 ¶ 12; Pl.'s R. 56.1 VN ¶ 12.)  On or about February 8, 2006, Plaintiff began a medical leave of absence from Metlife to battle breast cancer.  (Compl. ¶ 5; Answer ¶ 5.)  On February 12, 2007, Plaintiff ended her leave of absence and returned to work at Metlife.  (Def.'s R. 56.1 ¶ 38; Pl.'s 56.1 VN ¶ 44.)  Plaintiff's previous position, however, had been filled during her absence by Paula Fitzgibbon, another female employee.  (Def.'s R. 56.1 ¶ 35; Pl.'s Supp. 56.1 ¶ 44.)  As a result, from early February, 2007, until March 15, 2007, Plaintiff was not paid a salary by Metlife, but instead utilized her outstanding "paid time off" while she attempted to find another position within Metlife.  (Def.'s R. 56.1 ¶ 38-44.)  On March 15, 2007, Plaintiff's employment with Metlife was terminated when she did not secure another position with Metlife. (Compl. ¶ 10; Answer ¶ 10.)

**B.  Procedural History**

On August 9, 2007, Plaintiff filed the instant complaint against Metlife in New Jersey Superior Court.  (Notice of Removal.) [Docket # 1]  Metlife removed the action to this Court on September 7, 2007, based upon the diversity of the parties.  (*Id.*)  Plaintiff's complaint levied seven counts against Metlife.  (Compl.) [Docket #1]  Count I of the complaint asserted that Metlife's actions constituted "unlawful employment discrimination based upon medical disability, gender, and reprisal" in violation of  N.J.S.A. § 10:5-1 *et seq.*, New Jersey's Law Against Discrimination ("NJLAD").  (Compl. Count I.)  The additional counts of the complaint alleged that Metlife's actions also constituted various common law torts. (Compl. Counts II-VII.)

2

On October 8, 2007, Metlife filed a motion to dismiss all of Plaintiff's claims, save the NJLAD gender and disability discrimination claims contained in Count I of the complaint [Docket # 5]. The Court granted Metlife's motion to dismiss on May 30, 2008 [Docket #'s 18, 19].

Plaintiff's remaining cause of action against Metlife is that she has been, "discriminated against because of her medical disability and gender" in violation of the NJLAD. (Compl. at ¶ 14.)  To remedy Metlife's alleged discrimination, Plaintiff seeks, "damages including, but not limited to, lost wages and benefits, back pay, front pay, past and future benefits, loss of earning capacity, humiliation, damage to reputation, physical injury, emotional distress, and inability to enjoy life's pleasures and activities." (*Id.* at ¶ 14.)  Metlife argues, on various legal and factual grounds, that it is entitled to summary judgment on Plaintiff's remaining NJLAD claims.  (Def.'s Mot. Br.) [Docket # 23].  Plaintiff opposes Metlife's motion for summary judgment, and argues that there are genuine issues of material of fact in dispute that necessitate a jury trial.  (Pl.'s Opp'n. Br.) [Docket # 25].  After reviewing the parties' submissions, the Court concludes that summary judgment should be granted to Metlife because Plaintiff's remaining NJLAD discrimination claims fail as a matter of law.

## II.    DISCUSSION

### A.  Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.  56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### B.  NJLAD Claim Analysis Under The *McDonnell Douglas* Framework

The purpose of the NJLAD is to ban employment discrimination on the basis of certain enumerated attributes, including gender and disability.  *See* N.J. Stat. Ann. § 10:5-12(a).  To analyze NJLAD claims, the New Jersey Supreme Court has adopted the three-step burden-shifting analysis first developed by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (1999).  At the first stage of the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a *prima facie* discrimination claim.  *McDonnell*, 411 U.S. at 802.  If the plaintiff carries this burden, the analysis proceeds to the second stage, wherein the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory motive for its action.  *Id.*  Because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, the defendant is merely required to articulate, not prove, his non-discriminatory motive."  *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If the defendant does not articulate such a motive, the court must enter a judgment for the plaintiff "because no issue of fact remains in the case."  *Id*. at 254.  However, if the defendant meets its burden, the analysis

4

proceeds to the third and final stage – establishing pretext.

At the pretext stage, the burden of production shifts back to the plaintiff to show that the defendant's articulated motive was a pretext for discrimination.  *McDonnell*, 411 U.S. at 807. Pretext, for purposes of the *McDonnell Douglas* analysis, is defined as "a 'purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs;' in essence, pretext is a 'cover-up' for a discriminatory purpose." *Bowles v. City of Camden*, 993 F. Supp. 255, 262 (D.N.J. 1998) (quoting *Loeb v. Textron*, 600 F.2d 1003, 1012 (1ˢᵗ Cir. 1979)).  A plaintiff can establish pretext by pointing "to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).[2]

### C.  The *McDonnell Douglas* Framework Applied to Plaintiff's NJLAD Claims

When the facts of this case are analyzed within the *McDonnell Douglas* framework, Plaintiff's NJLAD claims fail as a matter of law.  At the outset, the Court notes that Plaintiff has presented no direct evidence of discrimination.  Metlife identifies this point in its moving brief,

---

[2]        Direct evidence is evidence that can "prove the existence of a fact . . . without inference or presumption." *See, e.g., Carter v. City of Miami*, 870 F.2d 578, 581-82 (11ᵗʰ Cir. 1989).  Direct evidence may consist of a facially discriminatory oral or written policy, *see, e.g., City of Los Angeles Dep't. Of Water & Power v. Manhart, 435 U.S. 702, 705 (1978)* (holding that policy requiring female employees to make larger contributions to a pension fund constitutes direct evidence of discrimination).  It may also consist of an oral or written statement by the defendant or its agent acknowledging that the employment decision was motivated by discrimination.  *Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7ᵗʰ Cir. 1994).  Direct evidence is rare in employment discrimination cases. When it is available, courts analyze the plaintiff's claims pursuant to the framework developed in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 273-79 (1989).  Circumstantial evidence, on the other hand, requires the factfinder to infer the existence of a fact from the circumstances described.  Circumstantial evidence may include "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces [that] might imply discrimination." *Troupe*, 20 F. 3d at 736.

and Plaintiff does not refute Metlife's contention or point to any direct evidence of discrimination in its opposition brief.  (Def.'s Mot. Br. at 18.);(Pl.'s Opp'n. Br.)  Because there is no direct evidence of Metlife's alleged employment discrimination, the Court must engage in the three-step analysis established by the Supreme Court in *McDonnell Douglas* and its progeny.

The first step in the *McDonnell Douglas* analysis requires Plaintiff to establish a *prima facie* case of employment discrimination.  To decide this motion, however, the Court will assume *arguendo* that Plaintiff has established *prima facie* cases of gender and disability discrimination, and proceed to the second stage of the *McDonnell Douglas* analysis.  The second stage requires Metlife to articulate a legitimate, non-discriminatory motive for Plaintiff's dismissal.  At this stage Metlife is "merely required to articulate, not prove, [its] non-discriminatory motive." *Burdine*, 450 U.S. at 253.  Metlife articulates that Plaintiff was terminated because of the "elimination of her position and her failure to secure another position within 30 days after returning from a leave of absence in accordance with MetLife's Leave Discontinuance Procedure."  (Def.'s Reply. Br. at 4.)  The Court concludes that this non-discriminatory motive for Plaintiff's termination satisfies the low threshold established in *Burdine*.

The analysis now proceeds to the third stage of the *McDonnell Douglas* framework, in which Plaintiff is required to prove that Metlife's articulated non-discriminatory motive was merely a pretext, or a "'cover-up' for a discriminatory purpose."  *Bowles* 993 F. Supp. at 262. (citations omitted).  To carry her burden at this stage, Plaintiff must point, "to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes*,

32 F.3d at 764 (3d Cir. 1994).

In her opposition brief, Plaintiff makes four general arguments why she has satisfied her burden under the third stage of the *McDonnell Douglas* analysis. The Court will analyze each argument in turn. First, Plaintiff claims that summary judgment is not appropriate because: (1) Metlife's articulated material facts are "unsupported by the factual record"; (2) Metlife's "statements are not supported by admissible evidence"; and (3) "some of Metlife's statements improperly draw inferences favorable to it, when inferences favorable to Ms. DiMare exist." (Pl.'s Opp'n. Br. at 4.) This argument fails because it does not satisfy Plaintiff's burden at the third stage of the *McDonnell Douglas* analysis. As noted, the third stage of the *McDonnell Douglas* framework demands that Plaintiff point to "some evidence" that Metlife's articulated non-discriminatory reason for Plaintiff's termination was a pretext to discriminate on the basis of gender or disability. Here, Plaintiff has simply noted her general disagreement with Metlife's rendition of the facts, without more. Plaintiff's first argument is therefore deficient.

Second, Plaintiff points to three events that she claims are circumstantial evidence of discrimination: (1) Plaintiff's poor performance appraisals in the three years prior to her termination; (2) reductions in Plaintiff's compensation that occurred during those three years; (3) an incident in which Eric Steigerwalt verbally abused Plaintiff "before he became her supervisor." (Pl.'s Opp'n. Br. at 4.) The Court concludes that these events, taken separately or in tandem, are insufficient as a matter of law to carry Plaintiff's burden of proof at the third stage of the *McDonnell Douglas* analysis. First, a reasonable factfinder could not decide that Plaintiff's poor performance appraisals form a pretext for gender discrimination under the facts

7

of this case.[3]   The parties do not dispute that Plaintiff's poor appraisals were primarily authored by her manager Ms. Robinson.  It is undisputed that Ms. Robinson is a female.  Indeed, Plaintiff's 2004 Performance Appraisal, submitted by Plaintiff in support of her opposition brief, bears the signature of Ms. Theresa Robinson and the notation, "Diana refused to sign." (Laderman Cert. Ex. T.)  The Court concludes that no reasonable factfinder could determine that the performance appraisals in question, primarily authored over three years by another female, are "some evidence" of invidious gender discrimination.  Second, while Plaintiff may have received reduced compensation prior to her termination, Plaintiff has submitted no evidence from which a reasonable fact finder could conclude that her compensation packages were anything more than the logical result of Plaintiff's poor performance appraisals.  As noted, those poor appraisals were primarily authored by her female supervisor, Theresa Robinson.  Third, with regard to Plaintiff's alleged altercation with Mr. Steigerwalt, in which he telephoned Plaintiff "yelling, screaming and swearing," it is not disputed that this isolated incident was years removed from Plaintiff's termination, and occurred before Mr. Steigerwalt attained any position of authority over Plaintiff.  (Pl.'s Supp. 56.1  ¶ 12-16.)   Further, in that telephone conversation, Plaintiff does not allege that Mr. Steigerwalt used terms that were sexist, or were construed by Plaintiff as sexist. (*Id.*)  As such, the Court concludes that none of these three events, viewed separately or in tandem, can reasonably be viewed as circumstantial evidence of gender discrimination as a matter of law.  Additionally, none of these events can support a reasonable finding of pretext to discriminate on the basis of Plaintiff's disability, because each of these three

---

[3]    In support of the argument that her poor performance appraisals show a pretext for discrimination, Plaintiff cites the New Jersey Supreme Court's decision in *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436 (2005).  The *Zive* decision is not in conflict with this Court's analysis or decision under the facts of this case.

events undisputedly occurred prior to Plaintiff's cancer diagnosis.  Plaintiff's second argument therefore fails.

Third, Plaintiff argues that both the "backfilling" of her position while she was on long-term leave and her ultimate termination were contrary to Metlife's company policy.  (Pl.'s Opp'n. Br. at 7-8.)  The Court concludes that Plaintiff's argument is factually unfounded.  Metlife has provided ample documentation of its internal Leave Discontinuance Procedure - which allows an employee to be terminated after six months long-term leave.  (Cochran Cert. Ex. A ("Discontinuance of Associates Receiving Disability/Workers' Compensation Benefits"))  As Plaintiff herself stated in her opposition brief, "Metlife might otherwise be lawfully authorized to have a policy that discharges employees who cannot return to work after six months treatment for a serious illness."  (Pl.'s Opp'n. Br. at 7-8.)  The undisputed evidence is that Metlife did, in fact, have such a non-discriminatory policy that allowed them to both "backfill" Plaintiff's former position, and to terminate Plaintiff after six months of long-term leave.  Further, Metlife has provided documentation which indicates that Metlife adhered to its internal policy when both "backfilling" Plaintiff's position, and ultimately terminating her.  (Cochran Cert. ¶¶ 1-10); (Cochran Cert. Ex. B ("Theresa Robinson e-mails"))  Paula Fitzgibbon, the employee who "backfilled" Plaintiff's AVP position with Metlife, is also a female.  (*Id.*)  In sum, Plaintiff has adduced no evidence from which a reasonable factfinder could conclude that either Metlife's "backfilling," or Plaintiff's termination in accordance with Metlife's policy was a pretext for gender or disability discrimination.  Plaintiff's third argument therefore fails.

Finally, Plaintiff argues that Metlife's failure to "consider Ms. DiMare for positions withing the company for which she was qualified upon her return from long-term disability" is

circumstantial evidence of gender and disability discrimination.  (Pl.'s Opp'n. Br. at 8.)  The record indicates that the "positions" to which Plaintiff alludes is, in fact, one AVP position. (Galusha Cert. Ex. A ("DiMare Deposition 5/29/08") at p. 164 ln. 18-20.)  Metlife posits that the individual hired for that position, a Mr. Das Gupta, was better qualified for the position than Plaintiff.  (Galusha Cert. Ex. H ("Steigerwalt Deposition") at p. 83 ln. 13-23.)  After extensive discovery, Plaintiff does not refute Metlife's argument that Mr. Das Gupta was, in fact, better qualified for the position than Plaintiff.  As such, Plaintiff has not provided any evidence to refute Metlife's articulated, non-discriminatory motive for its hiring of Mr. Das Gupta - his superior qualifications.  As such, Plaintiff's fourth argument fails the pretext phase of the *McDonnell Douglas* analytical framework.

In sum, to survive summary judgment on her remaining NJLAD claims, Plaintiff was required to provide, "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes*, 32 F.3d at 764 (3d Cir. 1994).  As the Court has explained, Plaintiff has failed to carry this burden.  Summary judgment will therefore be granted to Metlife on Plaintiff's remaining gender and disability discrimination claims.

## III.    CONCLUSION

For the foregoing reasons, the Court will GRANT summary judgment to Metlife on Plaintiff's remaining NJLAD gender and disability claims.  In light of this decision, the Court will order this case CLOSED.  An appropriate form of order accompanies this memorandum opinion.

Dated: December 1, 2008

                                                                  _____/s/ Garrett E. Brown, Jr._____
                                                             GARRETT E. BROWN, JR., U.S.D.J.